1  William Gwire, Esq. (59451)
   GWIRE LAW OFFICES
2  505 Montgomery Street, Suite 1000 (10th Fl)
   San Francisco, CA 94111
3  Telephone: (415) 296-8880

4
   Attorney for Plaintiff,
5  Azar Hadi

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF LOS ANGELES

10

11  AZAR HADI,                          )  Case No.  BC 6 9 6 6 5 9
                                        )
12                Plaintiff,            )  COMPLAINT FOR LEGAL
                                        )  MALPRACTICE, BREACH OF
13  vs.                                 )  FIDUCIARY DUTY, FRAUD AND
                                        )  MISREPRESENTATION AND ETHICAL
14  McCUNE WRIGHT AREVALO, LLP,         )  VIOLATIONS
    RICHARD McCUNE, DAVID WRIGHT,       )
15  THE KOMYATTE LAW FIRM, LLC, PAUL    )  JURY TRIAL DEMANDED
    KOMYATTE, and DOES 1 through 20,    )
16  inclusive,                          )
                Defendants.             )
17

18            BRIEF STATEMENT OF THE CASE          **By Fax**

19       Plaintiff Azar Hadi, ("Ms. Hadi" or "Plaintiff") asserts claims of legal malpractice, breach of

20  fiduciary duty, fraud and misrepresentation and various ethical violations against the law firm of

21  McCune Wright Arevalo, LLP ("MWA"), two of its partners, Richard McCune and David Wright, as

22  well as The Komyatte Law Firm ("KLF") and its principal, Paul Komyatte (all of whom together are

23  referred to as the "Defendants").

24       The Defendants collectively represented Plaintiff in a product defect/personal injury lawsuit

25  that was filed and proceeded in Los Angeles County under the name of *Hadi vs. Toyota Motor*

26  *Corporation, et al*, Los Angeles Superior Court Case No. BC444384 ("Hadi vs. Toyota"). The Hadi

27  vs. Toyota action involved serious and permanent injuries that Ms. Hadi suffered as a result of defects

28  within the various mechanical, electronic and/or computer operating systems of Ms. Hadi's 2004

---

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.

1



CIT/CASE: BC696659
LEA/DEF#:

RECEIPT #: CCH520872023
DATE PAID: 03/05/18  10:07 AM
PAYMENT:  $435.00        310
RECEIVED:
      CHECK:          $435.00
      CASH:            $0.00
      CHANGE:          $0.00
      CARD:            $0.00

1   Lexus ES330, manufactured by Toyota Motor Corporation. The defects caused Ms. Hadi's car to
2   unexpectedly and uncontrollably accelerate and violently crash into another car in Las Vegas, Nevada
3   in 2005. The phenomenon of what caused Ms. Hadi's accident has come to be known and referred to
4   as "sudden unintended acceleration" which was occurring in Toyota's Lexus brand of vehicles, as
5   well as other Toyota branded cars.

6          All the Defendants represented Ms. Hadi and worked on Hadi vs. Toyota from approximately
7   April 2010 until January 2017, when they assumed the representation of the Chapter 7 trustee that had
8   been appointed to take over Hadi vs. Toyota.

9          The process by which the trustee came to be appointed had its origins in July, 2016 when
10  Defendants, in an effort to defeat a summary judgment motion brought by Toyota, decided and caused
11  to be reopened, a prior bankruptcy proceeding for Ms. Hadi (which had been closed in 2010 as a
12  result of Ms. Hadi's discharge), and place her into a Chapter 7 bankruptcy proceeding in the Federal
13  District Bankruptcy Court for the District of Nevada. Defendants made the decision to reopen the
14  bankruptcy proceeding and engineered and supervised its reopening, although some of the actual
15  work was done by a local Las Vegas attorney, not named in this action. Plaintiff believes that Las
16  Vegas attorney was simply following the directions of Defendants.

17         The core of Ms. Hadi's claims of wrongdoing against Defendants centers on their conduct
18  related to the reopening of the bankruptcy and consists of three separate, but related instances of
19  wrongful and culpable conduct.

20         First, Ms. Hadi contends that the Defendants, and each of them, failed to inform her that the
21  reopening of the bankruptcy would result in her completely losing control of Hadi vs. Toyota because
22  the reopening would result in the appointment of a Chapter 7 trustee who would assume complete
23  control and all decision-making authority over the case, including the right to settle the case and the
24  amount of any settlement. Ms. Hadi did not wish to lose control over her case, especially to someone
25  whose interests, goals and motivations were not the same as Ms. Hadi's, and in fact, would regard Ms.
26  Hadi's interests as secondary to her own. Indeed, the obligations and fiduciary duties of the Chapter 7
27  trustee were in conflict with the interests of Ms. Hadi. Ms. Hadi would never have consented to the
28  reopening if she had known she was giving up her control of the Hadi vs. Toyota action.

    ///

1    Ms. Hadi alleges that the failure to disclose the information about the effects of the

2    bankruptcy reopening was both legal malpractice and a breach of the Defendants fiduciary duty to

3    her. Ms. Hadi additionally alleges, on information and belief, that Defendants failures to disclose the

4    information and their failure to fully inform her of the consequences of reopening the bankruptcy was

5    intentional and constitutes fraud and malicious conduct justifying the imposition of punitive damages

6    against each of the Defendants.

7    As a second act of wrongdoing, Defendants failed to inform Ms. Hadi that once the

8    bankruptcy was reopened, Defendants would terminate their representation of Ms. Hadi in Hadi vs.

9    Toyota, substitute the trustee as the Plaintiff in the Hadi vs. Toyota action, assume the representation

10    of the bankruptcy trustee, and thereafter represent the trustee to the exclusion and detriment of Ms.

11    Hadi. Ms. Hadi alleges that the failure to disclose this information was both legal malpractice and a

12    breach of the Defendants fiduciary duty to her. Additionally, on information and belief, Ms. Hadi

13    alleges that the failure to disclose this information by Defendants was also intentional and constitutes

14    a fraudulent and purposeful omission by Defendants justifying the imposition of punitive damages

15    against each of the Defendants.

16    As a third act of wrongdoing, Ms. Hadi claims that Defendants failed to properly and fully

17    research and investigate the options available to her which would have allowed her to defeat the

18    motion for summary judgment without the necessity of reopening the bankruptcy proceeding, or

19    alternatively, would have allowed her to maintain control of Hadi vs. Toyota even if the bankruptcy

20    had to be reopened. Had Defendants exercised reasonable care and done the necessary research and

21    investigation, they would have discovered and realized that Ms. Hadi could have either defeated the

22    summary judgment motion without reopening the bankruptcy, or that she could have maintained

23    control of Hadi vs. Toyota even if the bankruptcy had to be reopened. Ms. Hadi alleges that this

24    failure to conduct research and investigate her options constitutes legal malpractice.

25    Additionally, as an alternative theory, Ms. Hadi alleges, on information and belief, that

26    Defendants did, in fact, know that there were options available to her to defeat the summary judgment

27    motion without reopening the bankruptcy, or otherwise would have allowed her to maintain control of

28    Hadi vs. Toyota even if the bankruptcy had to be reopened, but intentionally failed to disclose those

options to her, and purposefully misled her about the trustee's responsibilities and authority to control

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.

3

1    the Hadi vs. Toyota action by intentionally minimizing the trustee's role and responsibilities.

2    Plaintiff is informed and believes that Defendants failed to make the disclosures referenced

3    above because they did not want Ms. Hadi to be in control of the ultimate settlement decision for Hadi

4    vs. Toyota fearing that Ms. Hadi would refuse to settle the case. The purposeful failure to disclose

5    this information and mislead Ms. Hadi was also intentional and constitutes fraudulent and purposeful

6    conduct by Defendants justifying the imposition of punitive damages against each of the Defendants.

7    As a result of Defendants wrongful conduct, Ms. Hadi lost control of Hadi vs. Toyota, and

8    lost her ability and right to decide if, when and for how much Hadi vs. Toyota would settle. In late

9    May 2017, less than a year after she was appointed, the trustee in Hadi's now reopened bankruptcy

10   settled Hadi vs. Toyota completely without Ms. Hadi's knowledge and what the trustee and

11   Defendants knew to be against Ms. Hadi's wishes. The settlement was achieved with the Defendants

12   active participation, for an amount far less than what Ms. Hadi would have accepted, for what they

13   knew to be an amount less than Ms. Hadi needed for her future medical and living needs. The

14   settlement and the events leading up to the settlement were a direct and proximate result of

15   Defendants failures to act competently, to make the disclosures referenced above and to act in Ms.

16   Hadi's best interests. Indeed, in doing the acts alleged, Defendants betrayed Ms. Hadi, breached their

     fiduciary duty to her and acted in their own self-interest.

17   Throughout the second half of 2017, Ms. Hadi desperately fought against the settlement, but

18   the trustee refused to withdraw her acceptance and the bankruptcy court ultimately approved the

19   settlement.

20   For the malpractice claims and fiduciary breaches described above, Ms. Hadi has been

21   damaged in amounts not presently known but measured by the difference of what she would have

22   been able to recover as her damages in Hadi vs. Toyota, and the amounts she will eventually recover

23   under the now settled Hadi vs. Toyota action. Ms. Hadi will also seek an award of punitive damages

24   in amounts to be determined at trial.

25   In addition to the above described wrongdoing, Defendants were also guilty of various ethical

26   violations described in the Fourth Cause of Action. For these wrongs, not arising to the level of

27   malpractice, Ms. Hadi seeks a disgorgement of attorneys' fees paid, or to be paid to Defendants.

28   ///

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.

4

EXHIBIT B
Page 13

# THE PARTIES

1.      Plaintiff Azar Hadi ("Hadi" or "Plaintiff") is a citizen of the State of California and a resident of Walnut Creek, Contra Costa County.

2.      Defendant McCune Wright Arevalo, LLP ("MWA") is a law firm with its principal place of business located in Ontario, Riverside County, California.

3.      Defendants Richard McCune and David Wright are principals, believed to be general partners of MWA.  Both McCune and Wright are licensed to practice law in the State of California, and for all times and events pertinent herein, were acting in the course and scope of their employment with MWA.  At all times, MWA and McCune and Wright were the attorneys of record for Ms. Hadi in Hadi vs. Toyota.

4.      Defendant, The Komyatte Law Firm, LLC (collectively, "KLF"), is a limited liability company organized and existing under the laws of the State of Colorado.  From and after April 2013, KLF undertook to represent and did represent Ms. Hadi in Hadi vs. Toyota.

5.      Defendant Paul Komyatte is, on information and belief, an individual and the only member or principal of KLF.  Plaintiff is informed and believes that Komyatte is licensed to practice only in the State of Colorado, and despite purporting to represent Plaintiff in Hadi vs. Toyota in California, was never specially admitted to practice in California as pro hac vice counsel. For all times and events pertinent herein, Komyatte was acting in the course and scope of his employment with KLF and was one of the attorneys of record for Ms. Hadi in Hadi vs. Toyota.

6.      Defendants Does 1 through 20, inclusive, are sued herein under fictitious names. Their true names and capacities are presently unknown to Plaintiff.  When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein.  Plaintiff is informed and believes and thereupon alleges that each of the fictitiously-named Doe Defendants is responsible in some manner for the occurrences herein alleged, and/or were the agents, partners, shareholders, members or principals of each other Defendant in doing the acts and omissions alleged herein, and were acting within the scope and course of their agency, partnership, shareholder, member or principal role, and that each of the fictitiously-named defendants are liable to Plaintiff for the acts and omissions alleged herein and for her damages.

## CHRONOLOGY OF EVENTS

### The Underlying Accident and Injuries Suffered by Ms. Hadi

7.      On April 1, 2005, Ms. Hadi (46 years old at that time) was driving her 2004 Lexus ES 330 that she had purchased new from a Lexus dealership that had 7,788 miles on it at the time of the accident. Ms. Hadi was driving on Fort Apache Road in Las Vegas, Nevada at a safe rate of speed and was slowing as she began to stop for a red light when her Lexus suddenly accelerated out of control without any driver input.  Despite all her efforts, she was unable to stop the vehicle by braking. Ms. Hadi stepped on the brakes and veered onto the curb attempting to avoid colliding with other vehicles. But, she was not successful. The Lexus collided with another vehicle in the intersection and Ms. Hadi suffered serious injuries in the crash. Ms. Hadi was the sole occupant of her vehicle. Fortunately, no one was killed.

8.      Ms. Hadi was transported to University Medical Center in Las Vegas with multiple bilateral lower extremity fractures, including an open comminuted intra-articular supracondylar and intracondylar distal left femur fracture, a closed comminuted intra-articular pilon fracture of the right distal tibia and fibula, an intra-articular fracture of her left femur, and a left patellar fracture along its medial and superior poles with complete disruption of the quadriceps mechanism off the superior pole.

Over the course of the past twelve years, Ms. Hadi has received ongoing treatment and undergone 24 surgeries in an attempt to treat the injuries to her legs with largely negative results. She has had to cope with constant pain and significantly diminished function of her left leg. Ms. Hadi has incurred more than $2 million dollars in medical billings and more than $1,250,000 in actual paid . medical expenses.

Ms. Hadi continues to suffer from the effects of her injuries and her prognosis is bleak. Presently, she suffers from severely limited motion of the right ankle, lacks extension at her left knee, has severe quadriceps deficiency, and walks with a loss of extensor function at her lower left leg. She has suffered numerous falls as a result of her left knee giving out. She is currently a candidate for an ankle fusion of her right ankle. With regard to her left leg, her artificial knee replacement is unlikely to last, given the stresses placed on her knee and the given circumstances. She is going to be forced to choose between three treatment options for her left knee: 1) revision of the knee replacement with

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.

6

1  little probability of success; 2) fusion of the knee with only slightly better prognosis for success; and

2  3) an above-the-knee amputation. Her future life care costs have been calculated to be approximately

3  $7,000,000 throughout the remainder of her life expectancy of approximately 26 years regardless of

4  whether she opts for or against amputation of her left leg.

5            **The Defects in Toyota's Lexus Cars and the Strength of Ms. Hadi's Case**

6          9.     Although not known at the time, Ms. Hadi's accident in 2005 was an occurrence of the

7  phenomenon of "sudden unintended acceleration", accidents caused by defects in Toyota and Lexus

8  braking and related systems. A full and complete exposition of the inherent defects in Lexus vehicles

9  within the range of years which included Ms. Hadi's car is beyond the scope of this pleading.

10  However, for purposes of this complaint, Ms. Hadi alleges that Toyota vehicles within certain model

11  groups, including her own Lexus, and over a range of years were found to have: (a) an inadequate

12  fault detection system that does not detect unintended acceleration; (b) parts within the electronic

13  traction control system which were susceptible to malfunction caused by short circuits and

14  electromagnetic interference: and (c) an inadequate brake override system, meaning that the driver is

15  unable to stop or even slow the car during an unintended acceleration event.

16          10.    The phenomenon of sudden unintended acceleration, known simply as UA, did not

16  become generally known until approximately 2009 or 2010 because Toyota was able to suppress the

17  problems and defects, typically blaming the driver by ascribing the accident to pedal confusion, or the

18  driver's foot getting caught on the floor mat. Ms. Hadi, like so many other Lexus and Toyota drivers

19  who experienced UA events would describe their accidents in terms of their brakes failing. That is

20  how Ms. Hadi described the accident to the Las Vegas investigating officer, who in his report noted

21  her claim that her brakes were not working, but also noted that there appeared to be "acceleration

22  marks" in the grassy center strip which Ms. Hadi drove onto in her effort to avoid hitting someone.

23  Ms. Hadi was initially so convinced that the accident was due to a failure of her braking system that

24  she had Toyota inspect the vehicle after the accident. Toyota claimed to find nothing wrong with the

25  braking system and so advised Ms. Hadi of its finding.

26          11.    Ms. Hadi, who maintained consciousness throughout the accident, was quite accurate

27  in her description of the accident, a fact important for purposes of her case against Toyota. In 2008,

28  long before the phenomenon of UA was known, long before Ms. Hadi knew she might have a claim

1   against Toyota, Ms. Hadi gave a deposition in a medical malpractice case arising from her injuries.  In

2   that case, she was asked to describe the accident.  She stated:

3           There was traffic, so I went to change lanes, because for
        some reason I couldn't brake. I don't know what happened. I felt
4       my brakes weren't working. So I tried to slow down, but it seems
        my car was just going faster and faster, and eventually went
5       through a light. . . . I tried to change lane because I didn't want to
        hit someone in front of me. . . . [a]nd eventually ended up being
6       part of my car on the sidewalk and part obviously on the street and
        passed through a red light . . . .
7

8   Later in the deposition, she was asked if she lost control of the vehicle.  She said:

9           I don't know if I lost control. For some reason, like I said,
        I just couldn't brake, or my brake wasn't working, and that's when
10      I – they checked my car and there was nothing wrong with the
        brake. So I obviously was pressing on the gas instead of the brake.
11

12          Like so many other drivers who experienced UA events, when told that their brakes appeared

13  to be working, they concluded that they must have been at fault.  This was all part of the false

14  narrative that Toyota was actively promoting.

15          12.    Since the phenomenon of the UA problem came to be known and Toyota's defective

16  systems were investigated, the evidence establishing Toyota's liability in UA cases has been

17  developed so thoroughly and has become so overwhelming that Toyota has settled every single UA

18  case filed against it since the case of *Bookout vs. Toyota* was decided against Toyota by an Oklahoma

19  jury in Oct. 2013. The number of actual cases is unknown but totals at least in the thousands.

20          In the *Bookout* case, the evidence of liability and wrongdoing developed by the plaintiff

21  attorneys was so overwhelming that the jury returned a verdict for general damages *and* found

22  grounds for an award of punitive damages.  However, Toyota settled the case for an undisclosed

23  amount before the jury was able to fix the amount of punitive damages. The settlement has remained

24  confidential, as confidentiality is imposed by Toyota on all UA cases it settles.[1]

25  *///*

26

27  [1] Some of the evidence that was developed for the Bookout case can be seen in a 3 minute, 15 second video featuring
    the Plaintiff lawyers who represented the Bookout parties.  The video can be seen at:
28  https://www.youtube.com/watch?v=9VFWWwVe67I

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.

8

1    In addition to the cases involving the injury and death of passengers and drivers, Toyota also

2    settled several class action cases brought on behalf of drivers who suffered economic damages as the

3    value of Toyota vehicles plummeted following public awareness of the UA problem. These cases,

4    defended heavily by Toyota, resulted in three years of intense litigation, which produced mountains of

5    damaging evidence about Toyota's effort to suppress all information about the UA problem. The

6    plaintiffs' lawyers in the class actions won a $1.6 billion settlement that benefitted approximately 22

7    million Toyota owners who have suffered economic damages arising from the UA problem. Toyota

8    also agreed to pay $30 million to fund automotive safety research and driver education.

9    Finally, in 2014, Toyota reached a $1.2 billion settlement with the U.S. Department of Justice

10    over the massive deception and coverup by Toyota of its defective vehicles leading to UA accidents.

11    As reported by numerous news organizations at the time:

12
13    Toyota Motor Co. lied to regulators, Congress and the public for years about the sudden acceleration of its vehicles, a deception that caused the world's largest automaker on Wednesday to be hit with a $1.2 billion Justice Department fine.

14
15    Prosecutors say Toyota's efforts to conceal the problem and protect its corporate image led to a series of fatalities that could have been prevented. The settlement, which amounts to more than a third of Toyota's 2013 profit, is being called the largest criminal penalty imposed on a car company in U.S. history.

16
17    Toyota admitted in the settlement papers that it misled Americans by making deceptive statements about the safety problems that caused its vehicles to speed up uncontrollably, a stark admission for a company that has built its brand on safety and reliability.

18
19
20    While neither the *Bookout* case, Toyota's settlement of all the UA cases, settlement of the

21    class action cases or the Justice Department settlement is an indication that Ms. Hadi had a strong

22    case or was guaranteed a favorable jury verdict, it demonstrates Toyota's clear knowledge of its

23    exposure to liability and its substantial risk of punitive damages as well as the strong body of

24    evidence developed to establish Toyota's liability.

25    **Ms. Hadi Discovers the Cause of Her Accident and Hires Counsel**

    13.    In March 2010, about five years after her accident, Ms. Hadi was watching a CNBC

26    news program that was discussing the phenomenon of sudden unintended acceleration and the

27    resulting lawsuits against Toyota. It reminded her of her own accident and as she listened to the

28

1   stories of other driver's experiences she knew that she had experienced such an event in her own
2   vehicle. As a result of the news program, she did an internet research, and not being familiar with the
3   kind of attorney she needed, searched for a product liability lawyer. She then discovered an attorney
4   by the name of James Gilbert in Colorado who was knowledgeable about product defect cases. She
5   contacted Mr. Gilbert's firm, but rather than speaking with him, she was referred to Defendant Paul
6   Komyatte, who was, at the time, a partner with Mr. Gilbert's firm.

7       14.    By mid-April 2010, Ms. Hadi had entered into a contingency fee agreement with Mr.
8   Komyatte's firm, Gilbert, Ollanik & Komyatte ("GOK"), which is not a party to this action. The
9   agreement provided that GOK would advance all costs on the case and would handle Ms. Hadi's
10  representation in exchange for 40% of the gross recovery achieved in any proceeding against Toyota.
11  Mr. Komyatte soon retained the firm of McCune Wright, (the name of the predecessor to Defendant
12  MWA) to act as local California counsel for the Hadi vs. Toyota case and a lawsuit was filed by
13  MWA and Mr. Komyatte (individually, not on behalf of GOK) in August 2010 in Los Angeles
14  Superior Court. However, by mid-2011, MWA had taken over principal responsibility for the
15  prosecution of the Hadi vs. Toyota case and GOK had dropped out of any formal representation of
16  Ms. Hadi. MWA's assumption of Ms. Hadi's case came through an Addendum to the GOK fee
17  agreement whereby in exchange for receiving 85% of whatever fee was due to GOK, MWA would
18  take over the lead counsel responsibilities. Komyatte, who had left the GOK firm in early 2011,
19  nevertheless continued to represent Ms. Hadi's interest from his position in the firm he went to, but by
20  no later than April 2013, had formed KLF and resumed sharing responsibilities for the Hadi vs.
21  Toyota case with Defendants MWA, McCune and Wright.

21      15.    At all times pertinent herein, Defendants MWA, Richard McCune and David Wright
22  for MWF, and Paul Komyatte, either personally or for the law firm he later formed, Defendant KLF,
23  represented Ms. Hadi in the Hadi vs. Toyota case. Defendants representation of Ms. Hadi ended in or
24  about January 23, 2017, when the Bankruptcy Court formally approved of their employment by
25  Shelley Krohn, the trustee that had been appointed as Ms. Hadi's Chapter 7 trustee (described below).
26  From then forward, Defendants represented Ms. Krohn, not Ms. Hadi.
27  ///

28                          **Ms. Hadi is Forced to File Bankruptcy**

EXHIBIT B
Page 19

16.    By early 2010, the financial burdens caused by the accident finally broke Ms. Hadi. Her mounting medical expenses (even though she had medical insurance, she had personal responsibilities for some of the staggering costs of her medical care), coupled with her lack of income because she was unable to work due to the injuries she sustained in the accident, forced her to file for bankruptcy in Las Vegas, Nevada.

She retained bankruptcy counsel in Las Vegas who prepared her papers and schedules, which were eventually filed on April 9, 2010. In her bankruptcy schedules, she inadvertently left off, as an asset, what was at that time the potential and unfiled claim she had against Toyota. The Toyota claim was omitted because Ms. Hadi did not understand that such a claim (which had not yet been evaluated by her attorney and who had not yet been formally retained) needed to be listed as a "contingent and unliquidated" claim under bankruptcy law. On July 20, 2010, the bankruptcy court granted her a complete no asset Chapter 7 discharge of all her debts with no distribution of any funds to creditors.

17.    Ms. Hadi's first complaint against Toyota was filed by Defendants on August 26, 2010, with a First Amended Complaint filed on Sept. 17, 2010. Thereafter, the progress of the Hadi vs. Toyota case was delayed as a result of it being consolidated in 2011 with a large number of other Toyota UA cases in Los Angeles Superior Court, consolidated under the case title *In re Toyota Cases*, bearing Case No. JCCP 4621. From and after the date the Hadi vs. Toyota case was consolidated, much of the normal process of the case was put on hold as discovery and other procedural matters relating to the UA cases in general proceeded under consolidated case JCCP 4621.

### Toyota's Motion for Summary Judgment

18.    On May 20, 2016, Toyota filed a Motion for Summary Judgment ("MSJ") in the Hadi vs. Toyota case, with a scheduled hearing date of August 8, 2016. The MSJ claimed, among other things, that Ms. Hadi's failure to disclose the Toyota claim in her bankruptcy schedules should result in a complete dismissal of her case against Toyota. Essentially, Toyota was asserting that Ms. Hadi had purposefully omitted the Toyota claim in order to keep any recovery on the Toyota claim entirely for herself, and that she should therefore be judicially estopped from being allowed to proceed on the Hadi vs. Toyota case.

19.    Defendants had to get their opposition to the MSJ filed by 14 days before the hearing date of Aug. 8, which meant their last day for filing was July 25, 2016. The primary responsibility for

1   preparing the opposition was assumed by Defendants Wright and Komyatte. Despite being given over

2   two months to prepare Ms. Hadi's opposition, for reasons not entirely clear, Defendants waited until

3   very late to prepare the opposition to the MSJ and then, it appears, rushed to get something filed by

4   the deadline. Eventually, Defendants developed (either on their own or based on someone else's

5   advice) the idea that to defeat the MSJ, Ms. Hadi had to reopen her bankruptcy and amend her

6   bankruptcy schedules to list the Toyota claim. On July 19, 2016, Defendant Wright reached out to Ms.

7   Hadi via email specifically because he wanted to discuss the MSJ. Plaintiff believes this was the first

8   occasion when Defendants contacted her about the opposition to the MSJ. Additionally, on or about

9   July 19 or 20, 2016, Defendants apparently retained attorney Tom Crowe, a bankruptcy specialist in

10  Las Vegas, and directed him to begin the process of filing the paperwork to reopen Ms. Hadi's

11  bankruptcy. The documents to accomplish the reopening of the bankruptcy were filed on July 25,

12  2016 and submitted in opposition to the MSJ. The bankruptcy documents allowed Defendants to

13  partially defend against the MSJ by saying that Ms. Hadi had corrected her mistake by amending her

14  bankruptcy schedules to include the Toyota claim. Ms. Hadi participated in the preparation of her

15  declaration that was filed in opposition to the MSJ, but all her communications about the bankruptcy,

16  limited as they were, were with Defendants. Ms. Hadi never met or talked with Mr. Crowe before the

17  bankruptcy was reopened and to her knowledge, Mr. Crowe's engagement and the reopening of the

18  bankruptcy were devised, engineered, handled and supervised entirely by Defendants.

19      20.     Plaintiff is informed and believes that Defendants did not receive any independent

20  advice regarding the reopening of the bankruptcy, and to the extent any research was done on the

21  implications and ramifications of reopening the bankruptcy, such research was done by Defendants

22  themselves. Plaintiff alleges that before the bankruptcy was reopened, Defendants knew, or should

23  have known that a Chapter 7 trustee would be appointed, and such trustee would have absolute

24  control over the Toyota case.

25      21.     On or about August 3, 2016, Toyota filed its Reply Brief on the MSJ. In that Reply

26  Brief, Toyota asserted, among other things, that in light of the reopening of the bankruptcy, Plaintiff's

27  claim against Toyota was now the property of the bankruptcy estate to be administered and supervised

28  by whatever trustee was to be appointed for the Chapter 7 bankruptcy. Although Plaintiff had been

given copies of Toyota's MSJ papers and Defendants Opposition papers, she was never given a copy

1   of Toyota's Reply Brief and except in the narrow, limited, restricted, incomplete and misleading

2   manner described below (see paragraph 42), was unaware of the ramifications of the reopening of the

3   bankruptcy.

4       22.    The reopening of Ms. Hadi's bankruptcy prompted the Hadi vs. Toyota court to delay

5   its ruling on the MSJ. The court expressed concern that while the bankruptcy had been reopened, it

6   was unclear what the trustee was going to do about proceeding with the claim against Toyota. By

7   then Las Vegas attorney and professional trustee, Shelley Krohn, ["Krohn"] had been appointed as the

8   Chapter 7 trustee for Ms. Hadi's bankruptcy. But, on Sept. 19, 2016, Defendants filed a document

9   establishing that Ms. Krohn was going to proceed with the Toyota case, and a few days later, on

10  September 23, 2016, the judge issued her decision denying the MSJ in its entirety. Plaintiff is

11  informed and believes that while the reopening of the bankruptcy was a factor in the Court deciding to

12  deny the MSJ, maybe even an important factor, Plaintiff does not believe it was the deciding factor

13  and that the MSJ would have been denied even without the bankruptcy being reopened.

14      23.    From and after her decision to proceed with the Hadi vs. Toyota case, Ms. Krohn took

15  over actual control of the case. Eventually, she was substituted in as the Plaintiff in the case and the

16  case title was changed to "Krohn vs. Toyota, et al". On or about December 16, 2016, while ostensibly

17  and legally still representing Plaintiff, Defendants made application to the Court to drop Ms. Hadi as

18  their client and take on the representation of Ms. Krohn as trustee in the Toyota defect case. The

19  Court approved Defendants retention as counsel for trustee Krohn on or about Jan. 23, 2017, and

20  thereafter, Ms. Krohn acted in all respects as the Plaintiff in the Toyota case. To the extent Ms. Hadi

21  was aware of any of these events actually taking place, she was completely unaware of the

22  implications and ramifications of these events on her right to control the Toyota case. Indeed, as set

23  forth in detail below, she was kept in the dark and ignorant of her loss of control over the Toyota case.

24      24.    In late May 2017, Ms. Krohn and Defendants, without Ms. Hadi's involvement,

25  advice, counsel, knowledge or approval, settled the Toyota defect case for an amount, which for the

26  time being will remain undisclosed. Ms. Hadi had no warning or prior knowledge that an acceptance

27  of an offer made by Toyota was coming. Indeed, she did not even know an offer in the amount

28  accepted had even been made. She only learned about it for the first time, and that Ms. Krohn had

    complete control over the case on May 25, 2017 when Mr. Wright delivered the news of the

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.

13

1    settlement to Ms. Hadi in person.  For purposes of any applicable statutes of limitations, Ms. Hadi

2    contends that May 25, 2017 was the earliest possible commencement date for any statutes of

3    limitations applicable to her case.

4        25.    Ms. Hadi was shocked, stunned and devastated by Ms. Krohn's acceptance of the

5    offer and settlement of the case.  She subsequently begged and argued with both Ms. Krohn and

6    Defendant Wright to withdraw the acceptance and not try to obtain approval of the settlement by the

7    bankruptcy court.  In the summer of 2017, she hired separate and independent counsel for herself to

8    try and convince Ms. Krohn and Defendants not to seek approval of the settlement.  She hired a

9    financial planner to demonstrate that her net recovery under the settlement would be insufficient, even

10    under a conservative planning approach, to meet her needs for the duration of her expected life span.

11    All of this was to no avail.  Ms. Krohn, with the assistance and complicity of the Defendants rejected

12    every argument and request made by Ms. Hadi and proceeded to seek Court approval of the

13    settlement which was granted (after hearing Ms. Hadi's objection) on or about December 7, 2017,

14    which was modified on February 12, 2018.  As of early February. 2018, Ms. Hadi has exhausted all

15    reasonable remedies to have the bankruptcy court reject the settlement.

    Ms. Hadi would never have accepted the settlement offer which Ms. Krohn accepted.

16                **FIRST CAUSE OF ACTION FOR LEGAL MALPRACTICE**

17                        **(Against All Defendants)**

18        26.    Plaintiff incorporates by reference paragraphs 1- 25 as though fully set forth herein.

19        27.    By their agreement to represent Ms. Hadi and provide all reasonably necessary

20    services to her relating to the Hadi vs. Toyota case, Defendants, and each of them, owed Ms. Hadi a

21    professional duty of care to render services with the level of competence, diligence, skill, knowledge

22    and ethical judgment meeting the standard of care for attorneys generally practicing under the same or

23    similar circumstances.

24        28.    At all times relevant herein, all Defendants claimed to have the requisite knowledge,

25    experience, and resources to handle the representation of Ms. Hadi in the Hadi vs. Toyota case.

26    Defendants were thus under a heightened standard of care to render services with the level of

27    competence, diligence, skill, knowledge, and judgment meeting the standard of care for other firms

28    and members of the legal profession who hold themselves out as having the requisite experience and

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.
14

EXHIBIT B
Page 23

1    resources to handle complex product defect proceedings on behalf of injured parties.

2         29.    Defendants breached their professional duties of care by failing to exercise the

3    requisite competence, diligence, skill and ethical judgment required of them in undertaking and

4    performing professional services for Ms. Hadi. Among other things, all Defendants, and each of

5    them, failed to fully and properly represent Plaintiff and were guilty of negligence in the following

6    respects:

7              a.    First, Defendants, and each of them, failed to properly and fully research,

8    investigate and evaluate the ramifications, consequences and effects of reopening Ms. Hadi's

9    bankruptcy. Having left inadequate time to perform proper due diligence on taking such a serious

10   course of conduct, Defendants plunged into the reopening of the bankruptcy without adequate

11   knowledge of what might happen, especially to the question of Ms. Hadi's control over the Toyota

12   case. Proper and timely research and evaluation of the effects of reopening a Chapter 7 bankruptcy

13   was essential and would have disclosed that a Chapter 7 trustee would have to be appointed and such

14   a trustee would have absolute control over the litigation, including the decision of whether to settle

15   and for how much. Defendants knew that Ms. Hadi was very reluctant to settle her case and wanted

16   to take it trial, so if they had known about the authority of a Chapter 7 trustee, Defendants would have

17   been obligated to fully disclose this critically important issue to Ms. Hadi and discuss the pros and

18   cons of reopening. At a minimum, they would have been required to fully inform her that she would

19   almost certainly lose her right to control the case as well as lose Defendants as her counsel as they

     would then proceed to represent the trustee.

20             b.    As a second separate act of malpractice, Ms. Hadi alleges that Defendants, and

21   each of them, failed to properly and fully research, investigate and evaluate the options available to

22   her which would have allowed her to either defeat the motion for summary judgment without the

23   necessity of reopening the bankruptcy proceeding, or alternatively, would have allowed her to

24   maintain control of Hadi vs. Toyota even if the bankruptcy was reopened. Had Defendants exercised

25   reasonable care and done the necessary research and investigation, they would have discovered that

26   Ms. Hadi could have either defeated the summary judgment motion without reopening the

27   bankruptcy, or that she could have maintained control of Hadi vs. Toyota even if the bankruptcy had

28   to be reopened.

1    One option that was available to Ms. Hadi even if she had to reopen the bankruptcy, but by no

2   means the only option, was to convert the bankruptcy from a Chapter 7 to a Chapter 13 shortly after

3   the bankruptcy was reopened.  Ms. Hadi would have qualified for such a conversion, because a

4   conversion from a Chapter 7 to a 13 was her right as a matter of law, and at that time, there would

5   have been little or no opposition from trustee Krohn or the court in allowing the conversion.  While a

6   trustee would have also been required under a Chapter 13 proceeding, such a trustee does not hold nor

7   exercise the type of control that a Chapter 7 trustee is given.

8        30.    At no time was Ms. Hadi willing to lose control over her case, especially to someone

9   like a Chapter 7 trustee whose interests, goals, motivations and obligations were not the same as Ms.

10   Hadi's. In fact, by law, a Chapter 7 trustee would be someone who would regard Ms. Hadi's interests as

11   secondary to her own obligations which were principally to collect sufficient funds to pay off Ms.

12   Hadi's creditors who were both small in number and small in amount. Indeed, Ms. Krohn's primary

13   fiduciary duty was in conflict with Ms. Hadi, as Ms. Hadi's interests were in maximizing the recovery

14   to herself, even to the extent of taking risks, whereas Ms. Krohn's duty was to only achieve a settlement

15   sufficient to pay off the creditors of the estate. Ms. Hadi would never have consented to the reopening if

16   she had known she was giving up her control of the Hadi vs. Toyota action to a Chapter 7 trustee. By

the time Ms. Hadi learned of the relevant facts, it was too late for her to do anything about it.

17        31.    As a direct and proximate result of Defendants professional negligence, Ms. Hadi lost

18   complete control of Hadi vs. Toyota, and lost her ability and right to decide if, when and for how

19   much the Hadi vs. Toyota action would settle.  In late May 2017, less than a year after she was

20   appointed, Ms. Krohn settled the Toyota case without Ms. Hadi's knowledge, but had she known

21   about it, would have been completely against Ms. Hadi's wishes and requests. The amount of the

22   settlement was for an amount far less than what Ms. Hadi would ever have accepted thus depriving

23   and denying Ms. Hadi of taking her case to trial or recovering a larger settlement amount. The

24   trustee's acceptance was done with the Defendants advice, counsel and direct complicity and what

25   they knew to be against Ms. Hadi's wishes.

26        32.    As a direct and proximate result of Defendants negligence, Ms. Hadi has been

27   damaged in amounts not presently known but which will be measured by the difference in what she

28   would have been able to recover as her damages in Hadi vs. Toyota (had she been left in control of

EXHIBIT B
Page 25

1    the case), and the amount she will eventually receive under the now settled Hadi vs. Toyota action.

2    While Ms. Hadi is not certain of the exact amount of her damages, she is informed and believes that it

3    is an amount not less than $8,000,000.

4        Wherefore Plaintiff prays for relief as hereafter set forth.

5        ## SECOND CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

6        ### (Against All Defendants)

7        33.    Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1- 25,

8    27-32 as though fully set forth.

9        34.    At all times relevant to the events set forth above, Defendants were in an attorney-

10   client fiduciary relationship with Ms. Hadi which entitled her to expect from Defendants and imposed

11   upon Defendants the highest duties of candor, honesty, competence, absolute fidelity and selfless

12   loyalty.

13       35.    The fiduciary duty of candor obligated Defendants to disclose all material facts to Ms.

14   Hadi including, but not limited to facts of which Ms. Hadi was unaware, but which Defendants knew

     or should have known would influence her decisions, even where such information was against the

15   interests of Defendants. The fiduciary duties of care and loyalty further obligated Defendants to give

16   correct and reliable advice to Ms. Hadi and included the duty of loyalty, which obligated Defendants

17   to represent her interests and not place their own or others' interests ahead of, or in conflict with Ms.

18   Hadi's or to place her interests in jeopardy. The fiduciary duty of loyalty is considered the highest

19   duty imposed on individuals in society and existed and governed Defendants relationship with Ms.

20   Hadi throughout their representation of her.

21       In addition to the fiduciary duties stated above, California Rules of Professional Conduct,

22   applicable to all lawyers licensed to practice in the State, and all lawyers purporting to practice as pro

23   hac vice admitted attorneys, provides, in many instances, a standard of care regarding the conduct of

24   attorneys representing clients in the state.

25       Among those rules, is Rule 3-500, which provides that:
     A member shall keep a client reasonably informed about significant developments relating to

26   the employment or representation, including promptly complying with reasonable requests for
     information and copies of significant documents when necessary to keep the client so

27   informed

28

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.
17

EXHIBIT B
Page 26

36.     At all relevant times, Ms. Hadi did, in fact, place full and total trust and confidence in Defendants, relied upon their integrity, honesty, candor, competence, fidelity and loyalty and believed (at least up until May 25, 2017) that that they were abiding by their fiduciary duties to her.

37.     Defendants breached their fiduciary and professional conduct duties to Ms. Hadi by, among other things, engaging in the following acts:

a.     Despite having knowledge of the effects and consequences of the reopening of her Chapter 7 bankruptcy, Defendants, and each of them, failed to inform Ms. Hadi that the reopening of the bankruptcy would result in her completely losing control of Hadi vs. Toyota because of the appointment of a Chapter 7 trustee who would assume all decision-making authority over the case, including the right to settle the case and the amount of any settlement.

The breach of fiduciary duty exists even if Defendants did not have actual knowledge of the effects of the reopening. The lack of knowledge, if there indeed was a lack of knowledge, was only because Defendants failed to fully research and investigate the matter, and because they should have disclosed to Ms. Hadi that they lacked sufficient knowledge and understanding to properly advise her about the effects of reopening the bankruptcy.

b.     Despite having knowledge of the effects and consequences of the reopening of her Chapter 7 bankruptcy, Defendants, and each of them, failed to inform Ms. Hadi that once the bankruptcy was reopened, Defendants would terminate their representation of Ms. Hadi in the Toyota case, substitute the trustee as the Plaintiff in the Hadi vs. Toyota action, assume the representation of the bankruptcy trustee, and thereafter represent the trustee to the exclusion and detriment of Ms. Hadi's interests.

The breach of fiduciary duty exists even if Defendants did not have actual knowledge of their assumption of the representation of the trustee. The lack of knowledge, if there indeed was a lack of knowledge, was only because Defendants failed to fully research and investigate the matter, and because they should have disclosed to Ms. Hadi that they lacked sufficient knowledge and understanding to properly advise her about what would happen upon reopening the bankruptcy.

c.     Defendants actively sought, worked for and accepted the legal representation of trustee and terminated Ms. Hadi's representation upon being appointed as counsel for the trustee. This conduct was not only a breach of their fiduciary duty to Ms. Hadi, it was additionally a violation

EXHIBIT B
Page 27

1    of both Rule 3-300 and Rule 3-310 which sets out specific prohibitions and obligations when an

2    attorney proposes to represent clients with potentially adverse interests.

3         Rule 3-300, entitled "Avoiding Interests Adverse to a Client", provides:
     A member shall not enter into a business transaction with a client; or knowingly acquire
4    an ownership, possessory, security, or other pecuniary interest adverse to a client, unless
     each of the following requirements has been satisfied:
5

6         (A) The transaction or acquisition and its terms are fair and reasonable to the client and
          are fully disclosed and transmitted in writing to the client in a manner which should
7         reasonably have been understood by the client; and

8         (B) The client is advised in writing that the client may seek the advice of an independent
          lawyer of the client's choice and is given a reasonable opportunity to seek that advice;
9         and

10        (C) The client thereafter consents in writing to the terms of the transaction or the terms
          of the acquisition.
11

12        Ms. Hadi contends that Defendants efforts and conduct in seeking out and accepting the

13   trustee's representation in the Toyota case was adverse to her within the meaning of Rule 3-300

14   because in agreeing to represent the trustee, Defendants were acquiring a security or pecuniary interest

15   by virtue of the fee they would receive through a settlement with Toyota. Indeed, the potential

16   interest that Defendants' fee represented was substantial. But, the potential fee was not the only

17   pecuniary interest Defendants were acquiring. Defendants, and particularly MWA had a substantial

18   investment in costs that it was hoping to recover by pursuing the Toyota case and in fear of losing if

19   Ms. Hadi demanded to go to trial. The Defendants interest in recovering their fee and costs was

20   adverse to Plaintiff because their new client - the trustee's - goals, motivations, obligations and

21   responsibilities were contrary and hostile to Plaintiff.

22        As noted earlier, the trustee's interest and goals were to achieve a settlement that would only

23   be sufficient to pay off the bankruptcy estate's creditors (a relatively small amount in Ms. Hadi case)

24   whereas Ms. Hadi's interest and motivation was to maximize the recovery for herself even going to

25   trial if necessary. With her obligation being to the creditors of the estate first and foremost, the trustee

26   not only had a different goal, obligation and motivation, but was obligated by law to put the creditor's

27   interest first. Indeed, it was her fiduciary duty to put the creditors' interests before that of Ms. Hadi.

     All of this was known or should have been known to Defendants before reopening the bankruptcy.
28

EXHIBIT B
Page 28

1     At no time before, during or after their engagement by the trustee, or their appointment by the

2   Court as counsel to the trustee, did Defendants, or any of them provide Ms. Hadi with the appropriate

3   disclosures, or obtain the requisite written authority from Ms. Hadi, as Rule 3-300 requires. Indeed, if

4   such disclosures had been made, and Ms. Hadi had consulted independent counsel, she would have

5   learned that the appointment of a trustee would have meant her loss of control and authority over the

6   Toyota case and she would therefore have never given consent to the reopening of the bankruptcy.

7     In addition to Rule 3-300, Rule 3-310, entitled "Avoiding the Representation of Adverse

8   Interests", provides in pertinent part:

9   
10     (B) A member shall not accept or continue representation of a client without providing written
     disclosure to the client where:

11     (1) The member has a legal, business, financial, professional, or personal relationship with a
     party or witness in the same matter; or
12     (2) The member knows or reasonably should know that:
     (a) the member previously had a legal, business, financial, professional, or personal
13     relationship with a party or witness in the same matter; and
     (b) the previous relationship would substantially affect the member's representation; or
14     (3) The member has or had a legal, business, financial, professional, or personal relationship
     with another person or entity the member knows or reasonably should know would be
15     affected substantially by resolution of the matter; or
     (4) The member has or had a legal, business, financial, or professional interest in the subject
16     matter of the representation.

17 
18     (C) A member shall not, without the informed written consent of each client:
     (1) Accept representation of more than one client in a matter in which the interests of the
19     clients potentially conflict; or
     (2) Accept or continue representation of more than one client in a matter in which the interests
20     of the clients actually conflict; or
     (3) Represent a client in a matter and at the same time in a separate matter accept as a client a
21     person or entity whose interest in the first matter is adverse to the client in the first matter.

22     (E) A member shall not, without the informed written consent of the client or former client,
     accept employment adverse to the client or former client where, by reason of the
23     representation of the client or former client, the member has obtained confidential information
     material to the employment.
24 

25     A comment to Rule 3-310 helps explain why paragraph (B) and its requirements are

26   applicable to the Hadi vs. Toyota situation, and why, Defendants were required to obtain Ms. Hadi's

27   informed written consent before they could accept (or even request) the representation of the trustee.

28 

EXHIBIT B
Page 29

1    The representation of Ms. Hadi inevitably involved the disclosure of confidential information and

2    material about Ms. Hadi and Ms. Hadi's case to the trustee.

3        The Comment states:

4        Paragraph (B) is not intended to require either the disclosure of the new engagement to a

5        former client or the consent of the former client to the new engagement. However, both
         disclosure and consent are required if paragraph (E) applies. While paragraph (B) deals with

6        the issues of adequate disclosure to the present client or clients of the member's present or
         past relationships to other parties or witnesses or present interest in the subject matter of the

7        representation, paragraph (E) is intended to protect the confidences of another present or
         former client. These two paragraphs are to apply as complementary provisions.

8

9        As used in Rule 3-310, the term "disclosure" is defined as follows:

10       (1) "Disclosure" means informing the client or former client of the relevant circumstances and
         of the actual and reasonably foreseeable adverse consequences to the client or former client;

11

12       And the requirement of obtaining "informed written consent" means:

13       (2) "Informed written consent" means the client's or former client's written agreement to the
         representation following written disclosure;

14

15       At no time before, during or after their engagement by the trustee, or their appointment by the

16    Court, did Defendants, or any of them provide Ms. Hadi with the appropriate written disclosures, or

17    obtain the requisite written authority from Ms. Hadi, as Rule 3-310 requires. Indeed, if such

18    disclosures had been provided, Ms. Hadi would have consulted independent counsel and learned that

19    the appointment of a trustee in her bankruptcy proceeding would mean her complete loss of control

20    and authority over the Toyota case. With such information and knowledge, she would never have

21    given consent to the reopening of the bankruptcy.

22       38.    As a direct and proximate result of Defendants breaches of fiduciary and statutory

23    duties, Ms. Hadi has been damaged in amounts not presently known but which will be measured by

24    the difference in what she would have been able to recover as her damages in Hadi vs. Toyota (had

25    she been left in control of the case), and the amount she will eventually receive under the now settled

26    Hadi vs. Toyota action. While Ms. Hadi is not certain of the exact amount of her damages, she is

27

28

EXHIBIT B
Page 30

1    informed and believes that it is an amount not less than $8,000,000.

2        Wherefore Plaintiff prays for relief as hereafter set forth.

3                    III. THIRD CAUSE OF ACTION FOR FRAUD
4        BY ACTIVE MISREPRESENTATIONS AND FRAUDULENT CONCEALMENT
                            (Against All Defendants)

5        39.    Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1-25,

6
7    27-32, and 34-38, as though fully set forth.

8        40.    Before Defendants decided to oppose the MSJ by reopening the bankruptcy

9    proceeding, they knew that Ms. Hadi was going to be what they considered to be a demanding or

10   difficult client, being unreasonable in her settlement demands and even insisting on going to trial

11   against Toyota.   That knowledge and belief came, at least in part, from an email sent by Ms. Hadi to

12   Defendant Wright on July 4, 2016, three weeks before Ms. Hadi's opposition to the MSJ was due. It

13   said:

14       Hi David,
15       I am kind of up now and did not have a good night last night. I did fax my social security
         document about couple weeks ago to you. Is it really necessary for you to come, I would love
16       to get an email regarding the update and you could always get credit on your ticket.
         Is Toyota going to reschedule the examination? If it was up to me **I would not even want to
17       be present at the mandatory mediation because I have no plan to settle with Toyota.** It is
         very difficult for me to travel, besides difficulties at the airport, it is even worse sitting in the
18       plane and high altitude does not help my legs.
         Thanks,
19       Azar
         (emphasis added)
20

21       The underlined and bolded portion of her email reveals that Ms. Hadi had little or no interest in

22   settling and wanted to go to trial.  Moreover, it further reveals that up to that point, she had not yet

23   been advised of either Defendants intention to reopen the bankruptcy, or that the trustee would be

24   assuming complete control of the Toyota case.  Naturally, Ms. Hadi would not be announcing that she

25   had "no plan to settle with Toyota", if she had been told that she would have no right to make that

26   decision with the reopening of the bankruptcy.  Plaintiff is informed and believes that with this email,

27   Defendants became even more deeply concerned and worried that Ms. Hadi would not agree to what

28   they believed might be a reasonable settlement offer and insist on taking the case to trial.

                    COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.
                                                22

1    41.    Both before and after the reopening of Plaintiff's bankruptcy proceeding, Defendants

2    and each of them, knew or had a reasonable, factual-based belief of each of the following:

3        a.    That there was a strong possibility they could defeat the Motion for Summary

4    Judgment *without* reopening the bankruptcy proceeding.

5        b.    That the reopening would result in the appointment of a Chapter 7 trustee.

6        c.    That with the appointment of a Chapter 7 trustee Ms. Hadi would lose total

7    control and authority over whether the case would go to trial, the settlement of the case, and the

8    amount of any settlement.

9        d.    That Ms. Hadi would more likely be willing to risk losing the MSJ than turning

10   over total control of her case to a Chapter 7 trustee;

11       e.    That a Chapter 7 trustee would be more likely (than Ms. Hadi) to follow

12   Defendants instructions and suggestions to settle the case and not go to trial and would be far less

     motivated to take the case to trial.

13       f.    That options existed for Ms. Hadi to maintain control of the Hadi vs. Toyota

14   litigation even if the bankruptcy was reopened, by, for example, seeking an early conversion of the

15   proceeding from a Chapter 7 to a Chapter 13.

16       g.    That if Ms. Hadi sought competent independent advice about the reopening of

17   the bankruptcy she was likely to learn everything Defendants were attempting to keep her from

18   knowing.

19       Each of these items of information were known by Defendants to be important, indeed

20   critically important to Ms. Hadi, the knowledge of which would have caused her to materially change

21   her position and decision about reopening the bankruptcy or maintaining it as a Chapter 7 proceeding.

22       On information and belief, Plaintiff alleges that sometime in July 2016, Defendants developed

23   a plan to wrest control of the Toyota litigation from Ms. Hadi.  As part of their plan to keep Ms. Hadi

24   in the dark about their immoral and corrupt intentions, Defendants did not tell her about her right to

25   seek independent counsel as required by their fiduciary duties and Rules 3-300 and 3-310 of the Rules

26   of Professional Conduct, did not advise her that they were in a conflicted relationship with her, did not

27   advise her that they could no longer give independent advice to her because of their conflicted

28   position, and did not suggest or recommend that she obtain independent counsel to protect her interests

EXHIBIT B
Page 32

1  in the Toyota litigation. And when, after the bankruptcy was reopened, Ms. Hadi had questions about

2  the bankruptcy proceedings, Mr. Wright, who was not experienced in bankruptcy matters, declined to

3  refer Ms. Hadi to Mr. Crowe, the Las Vegas bankruptcy attorney who followed Defendants

4  instructions in reopening the bankruptcy. Defendants failure to refer to Mr. Crowe was out of fear that

5  he would learn about Ms. Hadi's dread of losing control, advise her about the authority of the Chapter

6  7 trustee, and further advise her of options to avoid the loss of control by, among other things,

7  converting to a Chapter 13.

8       Plaintiff also alleges on information and belief that Defendants desire to keep Ms. Hadi in the

9  dark is why they left any disclosure about reopening the bankruptcy to the last minute; it was to avoid

10  Ms. Hadi having any time or opportunity to consult with separate, independent counsel.

11       42.    In furtherance of their plan, Defendants employed various devices to keep the material

12  information from Ms. Hadi. They purposefully failed to disclose material information to Ms. Hadi and

13  misled her as to other items of information. For example, on September 23, 2016, two months after the

14  bankruptcy was reopened, Defendant Wright sent an email to Ms. Hadi in which, for the first time, he

15  made a feeble and untruthful attempt at an explanation for what was happening with the bankruptcy

16  and the role the trustee would play.

17       He wrote:

18  "The other thing that it is important for you to understand is that this lawsuit is now the property of the bankruptcy estate, which means that the bankruptcy trustee has responsibility to oversee this litigation on behalf of the bankruptcy estate and the bankruptcy creditors, as well as on your behalf. That is why the Judge ordered the case back into the Intensive Settlement Process. But by agreeing to the continued trial date and the extension of the 5-year statute, we were able to keep the case active and keep the pressure on Toyota while at the same time complying with the Court's order that we re-engage in the settlement process."

19

20

21

22       Instead of a comprehensive, full and complete disclosure as the law required him to deliver to

23  Ms. Hadi, Mr. Wright devotes only one sentence to explaining the trustee's role and responsibilities in

24  the case. And, to compound his dishonest conduct, he misleadingly claims that the trustee is going to

25  "oversee" the litigation. While the definition of the word oversee has several meanings, none of the

26  accepted dictionaries in use in the United States defines it as "controlling" or "having complete

27  authority". Using the word "oversee", makes the trustee's involvement sound more like that of an

28

EXHIBIT B
Page 33

1    administrator, someone who will handle the procedural issues, but not make the actual critical

2    decisions. This concept of the trustee as "administrator" was reinforced by Mr. Wright in later

3    discussions he had with Ms. Hadi where he further led Ms. Hadi to believe that she would have

4    ultimate decision-making authority over any settlement.

5        43.    At no time prior to Sept. 23, did Mr. Wright or any other Defendant make any

6    disclosure or provide Ms. Hadi with any material and factually correct information about the trustee's

7    role in the Toyota case. On Sept. 19, 2016, Mr. Wright wrote to Ms. Hadi and said:

8        From: David C. Wright <dcw@mccunewright.com>
         Sent: Monday, September 19, 2016 9:52 AM
9        To: azar hadi
         Subject: Hadi v. Toyota
10       Hi Azar,
         How are you doing?  Do you have time this afternoon to speak with me regarding the case?  I
11       have spoken with the Bankruptcy Trustee who was recently appointed and would like to fill
         you in on the procedure going forward.  Let me know what time would be convenient for you.
12       Thank you,
         David
13

14       It is evident by this email that Mr. Wright had not, even as late as Sept. 19, nearly two months

15    after the reopening of the bankruptcy, advised Ms. Hadi of the trustee's role and responsibilities, and

16    Ms. Hadi' loss of authority and control. Nor did any such discussion take place after Sept. 19, 2016.

17    Mr. Wright's next communication was the misleading email of Sept. 23, 2016, and the deception of

18    Ms. Krohn's authority continued through to when it was eventually disclosed on May 25, 2017.

19       44.    Even as late as January 2017, Ms. Hadi was still completely in the dark and unaware

20    that she had no role in the critical decisions on the Toyota litigation. On January 4, Ms. Hadi wrote to

21    Mr. Wright in regard to an upcoming planned ISP (Intensive Settlement Process) conference at which

22    she understood there would be an attempt to settle the Toyota case. This was a very lengthy email to

23    Mr. Wright and, for confidentiality purposes, only the first two paragraphs are shown below. But, the

24    first two paragraphs are all that are relevant for this point.

25       From: azar hadi [mailto:azarhadi@hotmail.com]
         Sent: Wednesday, January 04, 2017 8:07 AM
26       To: David C. Wright <dcw@mccunewright.com>
27       Subject: My expectation for upcoming ISP

28       Dear David,

EXHIBIT B
Page 34

1

2    I want to make sure that there is no misunderstanding regarding my expectations for this case
     as you represent me at the upcoming ISP. Obviously, this is extremely important to me, and I
3    want the ISP mediation process to be as effective and productive as possible in the hopes of
     avoiding a trial. While I know that you would prefer that I settle this case and accept Toyota's
4    upcoming offer of $12 million, I must make it clear to you in advance that I absolutely cannot
     accept such a figure.

5
     After everything I've been through, with twenty-six surgeries and all of the absolute hell that
6    I've suffered over the past eleven years, I *do not* want to look back on this and realize that I
     settled for much, much less than I should have. This situation has literally ruined my life and
7    my future, and I will be dealing with the debilitating consequences of the April 1, 2005 crash
     for the rest of my life.
8

9        Even at this late date, it is evident that Ms. Hadi is operating on the false belief that she still

10   has the authority to settle the Toyota litigation. Throughout the entire lengthy email, she not once

11   makes any reference to the bankruptcy trustee; the word "trustee" is not even used.

12       And, significantly, at no time after this email was sent did Mr. Wright (or any other

13   Defendant) write to Ms. Hadi, or otherwise inform her that she no longer had any authority over the

14   settlement or remind Ms. Hadi of any conversation that was had at any earlier time in which such

15   information had been given. Instead, Mr. Wright writes back the same day and says:

16       Hi Azar,
17       Thank you so much for sending this. I have not had a chance to thoroughly review this
         yet, but should be able to do so tomorrow. I just wanted you to know that I received it and
18       will look over it carefully.
         I am glad that you will be seeing Dr. Olson. I hope she has some options for you that will
19       give you some relief/stability.
         I will respond further soon.
20       Happy New Year,
         David
21

22       Mr. Wright did not respond "soon" or ever. In fact, this email reinforced Defendants

23   belief that their fraud and deception needed to be maintained. It was not until May 25, 2017, after

24   Ms. Krohn had accepted an offer from Toyota for settlement of the case, and Mr. Wright traveled

25   to Northern California to personally break the news to Ms. Hadi that she understood that the

26   trustee and her lawyers, had hijacked her case from her.

27   ///

28

45.     The conduct of the Defendants, including their efforts to purposefully withhold vital information from Ms. Hadi as well as misleading her about other important information, was made with the intent and purpose of having her rely on them and agree to reopen the bankruptcy and thereafter, not take action to regain control of the Toyota case. In fact, in conducting themselves in the dishonest manner set forth above, Defendants were acting in their own self-interest because they knew that if Ms. Hadi maintained or regained control of the Toyota case, she would be a demanding client in terms of the settlement, and be more likely to want to take the case to trial, an option that caused Defendants concern and fear: they did not want to go to trial.

46.     In conducting themselves as they did, including actively concealing information and making intentional misrepresentations to Ms. Hadi, Defendants were acting within the course and scope of their responsibilities and duties of their respective firms and with the approval of their partners and members.

47.     Plaintiff did rely on the misleading representations and was unaware of the fraudulent omissions all to her damage as described above. Once she discovered that she had lost control and authority over the Toyota case on May 25, 2017, she desperately tried to convince Ms. Krohn to withdraw her acceptance of the settlement, but to no avail. She thereafter attempted to get the bankruptcy court to disapprove the settlement, also to no avail.

48.     Defendants fraudulent conduct prevented Ms. Hadi from seeking any independent advice prior to July 2017 (when she retained independent counsel for the first time) and thus she was prevented and deprived of attempting to regain control of the Toyota litigation, which is precisely what Defendants fraudulent conduct sought to achieve. As a consequence, Defendants have profited as a result of their wrongful and fraudulent conduct.

49.     Defendants wrongful conduct, as described above, was individually and collectively malicious, oppressive and fraudulent, constituted a fundamental betrayal of the Plaintiff's trust and justifies both a disgorgement of the fees Defendants were awarded, as well as an award of punitive damages in an amount according to proof.

Wherefore Plaintiff prays for relief as set forth below.

///

///

## IV. FOURTH CAUSE OF ACTION FOR
### VIOLATIONS OF THE RULES OF PROFESSIONAL RESPONSIBILITY
### AND OTHER ETHICAL VIOLATIONS
#### (Against All Defendants)

50.     Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1- 25 and 34-36, as though fully set forth.

51.     There is a well-established doctrine in California that an attorney's fees may be reduced or denied in their entirety, or disgorged, where the conduct of the attorney or law firm has been in violation of ethical rules of professional responsibility or otherwise in breach of the attorney's fiduciary duty to the client. *Goldstein v. Lees* (1975) 46 Cal. App. 3d 617.

The rule was stated in the Goldstein case as follows:

> "It is settled in California that an attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility. As the California Supreme Court explained in the seminal case of *Clark v. Millsap*, (1926) 197 Cal. 765, 785 [242 P. 918]. "[A] court may refuse to allow an attorney any sum as an attorney's fee if his relations with his client are tainted with fraud. Fraud or unfairness on the part of the attorney will prevent him from recovering for services rendered; as will acts in violation or excess of authority, and acts of impropriety inconsistent with the character of the profession, and incompatible with the faithful discharge of its duties.' (citing, 6 Cor.Jur. 722, 723.)" (Italics added.)

(See also *Priester v. Citizens Nat. etc. Bank*, 131 Cal. App. 2d 314, 322 [280 P.2d 835]; *Denton v. Smith*, 101 Cal. App. 2d 841, 845 [226 P.2d 723].) *Anderson v. Eaton*, 211 Cal. 113, 116 [293 P. 788]); *Jeffry v. Pounds*, 67 Cal.App.3d 6, 136 Cal.Rptr. 373; *Schaefer v. Berinstein*, 180 Cal. App. 2d 107, 135 [4 Cal. Rptr. 236]; *CalPak Delivery, Inc., v. United Parcel Service, Inc.; Michael N. Khourie, Objector and Appellant* (1997) 52 Cal.App.4th 1.)

52.     This doctrine allows clients who have been the victims of ethical violations not necessarily rising to the level of malpractice, to nevertheless be compensated for the wrongdoing, typically in the form of a denial, reduction or disgorgement in the attorneys' fees awarded or paid to the culpable lawyers.

53.     Defendants and each of them were guilty of a series of violations of rules of professional responsibility and/or ethical violations (collectively, the "ethical violations") justifying a reduction and/or disgorgement of the attorneys' fees they received pursuant to their fee agreement with Plaintiff. The ethical violations included, but were not necessarily limited to the following:

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.
28

EXHIBIT B
Page 37

1         a.    Ms. Hadi was not properly advised and was misled about the role and

2    responsibility of MWA when that firm was first brought into the case in August 2010 by Paul

3    Komyatte. Mr. Komyatte claimed that the McCune firm was just a minor firm hired solely to handle

4    local, non-important matters, when in fact, Mr. Komyatte knew that the McCune firm was always

5    going to be lead counsel in the case. Mr. Komyatte made the representations in order to induce Ms.

6    Hadi to become a client. Ms. Hadi is informed and believes that in making these particular

7    representations to her and failing to disclose the true purpose of MWA's involvement, Mr. Komyatte

8    was NOT acting within the scope of his role as an attorney for the GOK firm and is liable on a

9    personal and individual basis only.

10         b.    Ms. Hadi was not advised at the inception of the MWA retention by Mr.

11    Komyatte, Mr. McCune or Mr. Wright that there was a fee sharing agreement between MWA and

12    GOK. California law requires clients to be formerly advised of and approve (in writing) all fee

13    sharing agreements between counsel. The primary responsibility for the required disclosures fall to

14    the California admitted attorneys, who is referred to in the Rules as "member".

15        Rule 2-200 (in pertinent part) provides:

16        Financial Arrangements Among Lawyers (A) A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless: (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division;

17

18        Ms. Hadi was not advised of the fee sharing arrangement between MWA and GOK until June

19    2011, almost a year after MWA was retained by Paul Komyatte and filed the original complaint

20    against Toyota, listing themselves as lead counsel. As noted earlier, Rule 3-500 of California's Rules

21    of Professional Responsibility provides that: "A member shall keep a client reasonably informed

22    about significant developments relating to the employment or representation, including promptly

23    complying with reasonable requests for information and copies of significant documents when

24    necessary to keep the client so informed."

25         c.    In yet another instance of fee-sharing wrongdoing, Ms. Hadi contends there

26    was an undisclosed and unapproved, second, separate fee-sharing agreement between Mr. Komyatte

27    (as principal of his own firm, KLF) and MWA. This occurred between the time Mr. Komyatte left

28    GOK in 2011 and his appointment as special counsel in the bankruptcy proceeding in Jan. 2017. The

EXHIBIT B
Page 38

1  exact date and terms of this undisclosed fee-sharing arrangement are presently unknown, but was

2  acknowledged by Mr. Komyatte in his request to be approved by bankruptcy court as one of the

3  trustee's Special Counsel. The undisclosed fee sharing agreement is obliquely referenced in Mr.

4  Komyatte's declaration filed Dec. 16, 2016. In that declaration, filed under penalty of perjury, he

5  states: "The total Contingent Fee will not exceed 40% and will be shared between the Firm, the

6  Gilbert Firm and McCune Wright LLP". The "Firm" he is referring to in that sentence is the

7  Komyatte Law Firm, suggesting some type of additional split which, Ms. Hadi contends, she was

8  never told about and never approved.

9        d.    Ms. Hadi alleges she was misled about the role and responsibilities of Mr.

10  Komyatte in her case, specifically after he left GOK in Feb. 2011. Although he told her he was

11  leaving GOK, he nevertheless continued to work on her case while with another firm. Ms. Hadi never

12  had a separate fee agreement with Mr. Komyatte or KLF and believes his purpose in misleading her

13  was to try and secure a fee for himself in conflict with his fiduciary duties to GOK.

14        e.    Ms. Hadi alleges there was unethical conduct related to various substitution of

15  attorneys that were requested by McCune, Wright, for an attorney named Ollanik and

16  for Mr. Komyatte, but never (apparently) filed.[2] For example, when Mr. Komyatte left GOK in early,

17  2011, and joined a law firm by the name of Ridley, McGreevy & Winocur, he continued to do work for

18  Ms. Hadi on the Toyota case, despite no agreement between Ms. Hadi and the Ridley firm, and no

19  substitution of attorneys form ever signed by Ms. Hadi, or filed with the Court allowing for the Ridley

20  firm's representation of Ms. Hadi. It is unclear whether GOK (then known as the Gilbert Law Firm)

21  was even aware of Mr. Komyatte's continuing work.

22        Then, no later than April 2, 2013, Mr. Komyatte registered himself as The Komyatte Law

23  Firm, LLC with the Colorado Secretary of State's office. With the MWA's apparent complicity, he

24  continued to represent Ms. Hadi under his new firm name, but without ever obtaining or filing a

25  _____

26  [2] California Code of Civil Procedure Section 284 provides:
     The attorney in an action or special proceeding may be changed at any time before or after
     judgment or final determination, as follows:
     1.   Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes;
     2.   Upon the order of the court, upon the application of either client or attorney, after notice from
          one to the other.

EXHIBIT B
Page 39

1  legally required formal, client approved substitution of attorney's form.  No substitution appears to

2  have ever been filed with the Los Angeles Superior Court, or the companion consolidated Toyota case

3  JCCP 4621, also being administered in Los Angeles Superior Court.

4     f.    Ms. Hadi contends that in violation of California law, no pro hac vice applications

5  were ever submitted for Mr. Komyatte in either of the California State Court cases having authority

6  over Ms. Hadi's Toyota case, and on which Mr. Komyotte performed services.  And, with no

7  applications ever having been filed, it does not appear that either court ever approved Mr. Komyatte

8  for pro hac vice admission.[3]  This, despite continual representations to the courts (by submissions of

9  various pleadings) over a seven and a half-year period that pro hac vice applications were either under

10 submission or going to be submitted for Mr. Komyatte.  The alleged wrongdoing regarding the pro

11 hac vice applications, coupled with Mr. Komyatte's work on the cases (through three different firms,

12 including his own) represents a fraud on the court(s), a fraud on opposing counsel, and an

13 unauthorized practice of law in the State of California.  Business & Professions Code §6125 states:

14 "No person shall practice law in California unless the person is an active member of the State Bar."

15 Moreover, the unauthorized practice may rise to the level of a misdemeanor.  Business & Professions

16 Code §6126 provides:

17 ─────────────────────────

[3] Rule 9.40 of the California Rules of Court, provides as follows:
18 Counsel pro hac vice:
   (a) Eligibility: A person who is not a member of the State Bar of California but who is a member in good standing of
19 and eligible to practice before the bar of any United States court or the highest court in any state, territory, or insular
   possession of the United States, and who has been retained to appear in a particular cause pending in a court of this
20 state, may in the discretion of such court be permitted upon written application to appear as counsel *pro hac vice*,
   provided that an active member of the State Bar of California is associated as attorney of record. No person is eligible
21 to appear as counsel *pro hac vice* under this rule if the person is:
       (1) A resident of the State of California;
22     (2) Regularly employed in the State of California; or
       (3) Regularly engaged in substantial business, professional, or other activities in the State of California.
23 (b) Repeated appearances as a cause for denial
       Absent special circumstances, repeated appearances by any person under this rule is a cause for denial of an
24     application.
   (c) Application
25     (1) *Application in superior court*
           A person desiring to appear as counsel *pro hac vice* in a superior court must file with the court a verified
26         application together with proof of service by mail in accordance with Code of Civil Procedure section
           1013a of a copy of the application and of the notice of hearing of the application on all parties who have
27         appeared in the cause and on the State Bar of California at its San Francisco office. The notice of hearing
           must be given at the time prescribed in Code of Civil Procedure section 1005 unless the court has
28         prescribed a shorter period.

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.
31

I

1    (a) Any person advertising or holding himself or herself out as practicing or entitled to
     practice law or otherwise practicing law who is not an active member of the State Bar,
2    or otherwise authorized pursuant to statute or court rule to practice law in this state at
     the time of doing so, is guilty of a misdemeanor punishable by up to one year in a
3    county jail or by a fine of up to one thousand dollars ($1,000), or by both that fine and
4    imprisonment.

5    In various pleadings and other documents filed in the two pending cases in California

6    with jurisdiction over Ms. Hadi's case, and on which Mr. Komyatte did work, he "held

7    himself...out...as...entitled to practice law" in the state of California by virtue of non-existent

8    pro hac vice applications submitted or "to be submitted", when he had no intention of

9    submitting such applications.

10    Additionally, the failure to properly submit pro hac vice forms, is both the responsibility of

11    the attorney seeking special admission, as well as the attorney or law firm sponsoring the special

12    admission attorney. Indeed, no out of state attorney can gain pro hac vice admission without having a

13    California licensed attorney sponsor him or her. In the case of Mr. Komyatte's deceptive and possibly

14    fraudulently claimed admission, the sponsoring attorneys were Defendants McCune, Wright and

15    MWA. The sham claim that Mr. Komyatte's pro hac vice admissions were going to be submitted

16    represented a fraud on the court and a fraud on opposing counsel by MWA, McCune and Wright as

17    well as a violation of the Rules of Professional Conduct.[4]

18    54.    The ethical violations and other instances of wrongdoing noted in 53 (a) – (g) as

19    well as the breaches of fiduciary duty discussed in the Second Cause of Action, represent a course

20    of conduct by Defendants that systematically violated California law, Rules of Professional

21    Conduct and other statutes applicable to attorney conduct, all of which justify and warrant a

22    substantial reduction in, or disgorgement of the attorneys' fees received by Defendants.

23    Wherefore Plaintiff, Ms. Hadi prays for relief as follows:

24    ///

25

26    [4] California Rule of Professional Conduct, Rule 1-300 provides in relevant part:
     Unauthorized Practice of Law
27    (A) A member shall not aid any person or entity in the unauthorized practice of law.
     (B) A member shall not practice law in a jurisdiction where to do so would be in violation of regulations of the
     profession in that jurisdiction.

28

## PRAYER FOR RELIEF

1. On the First and Second Causes of Action;

   Compensatory damages as established by proof; but not less than $8,000,000.

2. On the Third Cause of Action;

   Punitive damages according to proof.

3. On the Fourth Cause of Action;

   For a refund of attorneys' fees paid to Defendants in amounts as may be established

   by the evidence.

4. On all Causes of Action;

   Costs as allowed by law;

   Pre-judgment interest as allowed by law;

   Such other and further relief as may be allowed.

DATED: February 27, 2018                                    GWIRE LAW OFFICES


                                                           William Gwire, Attorney for Azar Hadi

COMPLAINT: HADI vs. McCUNE WRIGHT AREVALO AND KOMYATTE, et al.
33

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address):<br>William Gwire (SBN 59451)<br>Gwire Law Offices<br>505 Montgomery Street, 10th Fl.<br>San Francisco, CA 94111<br>TELEPHONE NO.: 415-296-8880    FAX NO.:<br>ATTORNEY FOR (Name): Plaintiff | FOR COURT USE ONLY<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>FEB 28 2018<br><br>Sherri R. Carter, Executive Officer/Clerk of Court<br>By _____ Tong , Deputy<br>Judi Lara |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME:

CASE NAME:
Azar Hadi vs. McCune Wright Arevalo, et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER:<br>**BC 696659** |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT:    **By Fax** |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint (not specified above) (42) |
| ☑ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition (not specified above) (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): four
5. This case ☐ is ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: February 27, 2018
William Gwire
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

**EXHIBIT B**
**Page 43**

`* CM-010`

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

**EXHIBIT B**
**Page 44**

| SHORT TITLE: Hadi vs. McCune Wright Arevalo et al | CASE NUMBER **BC 6 9 6 6 5 9** |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**By Fax**

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Hadi vs. McCune Wright Arevalo et al | CASE NUMBER | |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☒ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation        Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

EXHIBIT B
Page 46

| SHORT TITLE: Hadi vs. McCune Wright Arevalo et al | CASE NUMBER |
| --- | --- |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
| --- | --- | --- | --- |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Hadi vs. McCune Wright Arevalo et al | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☑ 2. ☑ 3, ☐ 4, ☐ 5. ☐ 6, ☐ 7, ☐ 8, ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br>111 North Hill Street |
|---|---|

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central Judicial _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: Feb. 27, 2018

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**